## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | |
|---|---|
| **ALPHONSO CRAWFORD, II ,** ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 10-CV-2242** |
| ) | |
| **TIMOTHY BUKOWSKI,** ) | |
| **and JAMES STEVENSON,** ) | |
| ) | |
| **Defendants.** ) | |

### OPINION

This case is about whether a state correctional institution is required to provide a prisoner with meals in accordance with his religious dietary needs. The case is before the court on Defendants' Motion for Summary Judgment [37]. While being detained before trial at the Cook County Jail, Plaintiff requested and was given vegan meals. He was then transferred to the Jerome Combs Detention Center (JCDC) for about a month. While at the JCDC, Plaintiff requested but was denied vegan meals. In fact, the JCDC readily admits that it has budgeted only so much for inmate meals, and vegan meals do not fit within that budget. In a series of admirably well-researched and well-drafted pleadings, Plaintiff challenges the JCDC's refusal to accommodate his religious dietary restrictions by providing him with vegan meals.

This court has carefully and thoroughly reviewed the arguments of the parties and the documents provided, including the exhibits provided and the transcript from Petitioner's deposition. Following this careful consideration, Defendants' Motion [37] is GRANTED.

## Findings of Fact[1]

1. Plaintiff is currently in the custody of the Illinois Department of Corrections. ([38] ¶ 2). At the time he filed the complaint, he was at the Cook County Jail [17], but has since been transferred to the Dixon Correctional Center (Text Order of August 25, 2011).

2. On July 24, 2010, Plaintiff was transferred from the Cook County Jail to the JCDC. [17].

3. Between July 24, 2010 and August 21, 2010, Plaintiff was held as a pre-trial detainee at the Jerome Combs Detention Center (JCDC) in Kankakee County, IL. [17].

4. There, the intake officers asked Plaintiff what his religious preference was. Plaintiff self-identified as a Hebrew-Israelite. Plaintiff requested vegan meal trays due to his religious beliefs. Plaintiff indicated to JCDC staff that he previously received vegan trays at the Cook County Jail and provided a document indicating so. The intake officer was not sure who was responsible for dietary requests. ([17] p. 4).

5. Defendant Bukowski was, at all relevant times, the Kankakee County Sheriff. [38] exh. B ¶ 1, hereinafter "Bukowski Aff."). Defendant Bukowski was not involved in JCDC operations. (Bukowski Aff. ¶ ¶ 2-3).

6. Plaintiff did not speak, correspond, or otherwise interact with Defendant Bukowski regarding his request for vegan meals. ([38], exh. A, 53:15-54:5, hereinafter "Dep.").

7. JCDC operations, including the processing of grievances, are handled by Chief of Corrections Michael Downey and his staff. (Bukowski Aff. ¶¶ 6-9; [38] exh. C ¶¶ 1-2, hereinafter "Downey Aff.").

---

[1] Facts are taken from Defendants' Statement of Uncontested Facts when supported by the provided exhibits and not contested or otherwise opposed by Plaintiff.

8. Defendant Stevens was the Program Director at JCDC, and as such, was responsible for planning and coordinating social services, including group religious worship or study. ([38], exh. D, ¶¶ 1-3, hereinafter "Stevens Aff.").

9. Defendant Stevens was not involved in the making or implementation of the food and meal policies, and has no authority to grant an inmate's request for an alternative diet. (Downey Aff. ¶ 4; Stevens Aff. ¶¶ 4-6.)

10. Plaintiff is forbidden from eating any meat or meat products, including milk, dairy, egg, cheese, or fish, according to the dietary laws of his religion. He is only permitted to eat fruits, vegetables, nuts, seeds, and grains. (Dep. 37-38).

11. On July 25, 2010, Plaintiff filed a written request to receive vegan meal trays. ([17] p. 4).

12. JCDC's food service provider does not provide a vegetarian or vegan meal for any inmate detained at JCDC due to the cost restrictions. ([38] exh. E, ¶ 14, hereinafter "Lowe Aff.").

13. Plaintiff's request for vegan meals was denied. (Dep. 56).

14. While he was in custody at JCDC, Plaintiff ate only the grains, fruits, and vegetables off the standard meal trays. That portion of the meal tray was not enough food to fill Plaintiff so he was constantly hungry. (Dep. 55-56). Other inmates did not give Plaintiff portions of their meals. (Dep. 57).

15. Plaintiff suffered from emotional distress from being hungry and from being "really down because [he] wasn't able to eat normal like everyone else was." (Dep. 55 ¶ 21-23).

16. JCDC provides three non-pork meals per day, totaling at least 2,400 calories. These meals are designed to be nutritionally adequate by JCDC's food service provider. (Downey Aff. ¶ 14; Lowe Aff. ¶¶ 1-3, 8).

17. Individualized meals are not provided to inmates unless otherwise ordered by a physician for medical reasons. (Downey Aff. ¶ 15).

18. JCDC's food service contract has budgeted $3.05 per meal per inmate. (Downey Aff. ¶ 10; Lowe Aff. ¶ 9).

19. The cost of providing a nutritionally adequate vegetarian meal is at least $5 per meal and exceeds the per-meal budget by 64%. (Lowe Aff. ¶ 11)

20. The cost of providing a nutritionally adequate vegan meal is at least $10 per meal and exceeds the per-meal budget by 228%. (Lowe Aff. ¶ 12).

21. Defendants aver that providing a standardized dietary plan promotes administrative and staff efficiencies in that the same meal is purchased and served to all inmates at the same time. (Downey Aff. ¶ 16).

22. Defendants aver that providing a standardized dietary plan avoids jealousy among inmates and therefore promotes jail order and security. (Downey Aff. ¶ 17).

23. Inmates are allowed to supplement their provided meal through the commissary, which offers several vegan and non-vegan food items. (Downey Aff. ¶ 23).

24. Funds to purchase meals for inmates are provided by the Kankakee County Board. (Downey Aff. ¶ 9).

25. Muslim inmates participating in Ramadan receive the same pork-free meals as the other inmates, but at different times. (Downey Aff. ¶ 29).

26. The JCDC has denied inmate requests for Halal, Kosher, vegetarian, and vegan diets since 2006. (Downey Aff. ¶ 21).

- 4 -

27. Plaintiff was permitted to read his Book of Yahweh, pray in his cell during the day, pray over

meals, study his religion, and celebrate his religious holidays. (Dep. 58:10-20; Downey Aff.

¶ 7).

28. On August 21, 2010, Plaintiff was transferred back to the custody of the Cook County

Sheriff's Department. (Downey Aff. ¶ 6).


**Procedural Posture**

On January 28, 2011, Plaintiff Alphonso Crawford, II filed his Amended Complaint [17].

As per this court's Order of January 21, 2011, Defendant correctly removed all the unidentified

"John Doe" defendants in the Amended Complaint [17]. The Amended Complaint [17] named

Sheriff Timothy Bukowski, "Doctor Tom", and "Mr. Stevenson". At a Merit Review screening

held pursuant to 28 U.S.C. 1915A on May 13, 2011, this court allowed Plaintiff to proceed with

his First and Eighth Amendment claims. (Text Merit Review Order of May 13, 2011).

Defendants filed their Answer on August 9, 2011 [31]. On March 21, 2012, Defendants filed

their Motion for Summary Judgment and supporting memorandum with seven exhibits. ([37],

[38]). On April 9, 2012, Petitioner filed his Response [40]. On April 16, 2012, Defendants filed

their Reply [42]. This case being fully briefed, the court will now rule on Defendants' Motion for

Summary Judgment [37].


**Analysis**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for

summary judgment, a district court has one task and one task only: to decide, based upon the

evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v.*

*Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court

must construe the evidence in the light most favorable to the nonmoving party and draw all

reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986*); Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir.

2010). However, "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at

248. If it is clear, based upon the undisputed facts, that a plaintiff will be unable to satisfy the

legal requirements necessary to establish his case, summary judgment is not only proper, but

mandated. *See Celotex,* 477 U.S. at 322; *Padula v. Leimbach,* 656 F.3d 595, 600–01 (7th

Cir.2011).

Plaintiff seeks declaratory relief, injunctive relief, and damages for alleged violations of

his First and Eighth Amendment rights, pursuant to 42 U.S.C. § 1983. Defendants' Motion for

Summary Judgment also addresses the Religious Land Use and Institutionalized Persons Act of

2000, Pub. L. 106-274, codified at 42 U.S.C. § 2000cc ("RLUIPA"). While Plaintiff made a

RLUIPA claim in his complaint, this court did not explicitly permit him to pursue that cause of

action in its Merit Review Order of May 13, 2011. In the interest of thoroughness, the present

opinion will also analyze Plaintiff's RLUIPA claim.

There are two named defendants, Sheriff Timothy Bukowski and James Stevenson. Both

are state employees. As per this court's instruction on May 13, 2011, the Eleventh Amendment

bars Plaintiff from recovering monetary damages from Defendants while acting in their official capacity. *Wynn v. Southward*, 251 F.3d 588, 591 (7th Cir. 2001); *Kentucky v. Graham*, 473 U.S. 159 (1985). Suits for injunctive or declaratory relief, however, may proceed.

*I. Preliminary matters*

    Plaintiff was held as a pretrial detainee. As such, he may not be subjected to any form of punishment for the crime for which he is charged. *Rapier v. Harris*, 172 F.3d 999, 1002-03 (7th Cir. 1999). To do so would be to deny the precept that a person is innocent until after a judicial determination of guilt. Nevertheless, "a person lawfully detained in pretrial confinement because there is probable cause to believe that he has committed a crime is subject to certain restrictions on his liberty." *Id*. at 1003. Thus, as long as "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979) (editing marks omitted.) Thus, because Defendants have demonstrated that the unavailability of vegan meals is due to budgetary concerns, because there is a legitimate penological interest in staying within the prison's budget, and because there is a rational relationship between not offering a more expensive vegan meal and a limited budget, Plaintiff's status as a pretrial detainee does not swing the analysis in his favor. *See Shakur v. Schriro*, 514 F.3d 878, 886 (9th Cir. 2008) (holding a rational connection existed between denying Muslim prisoners Kosher meals and the legitimate budgetary concerns of reducing expenditures); *Williams v. Morton*, 343 F.3d 212, 218 (3d Cir. 2003) (holding that "providing vegetarian meals, rather than Halal meals with meat, is rationally related to the

legitimate penological interests in simplified food service, security, and staying within the prison's budget.")

Additionally, this opinion assumes that Plaintiff has appropriately exhausted his prison grievance procedures, pursuant to the strictures of the Prison Litigation Reform Act. 42 U.S.C. § 1997e; *see McCoy v. Gilbert*, 270 F.3d 503, 507 (7th Cir. 2001). Plaintiff alleges that he submitted a grievance form and was denied his vegan meals, and Defendants do not argue that he has failed to exhaust his administrative remedies.

*II. Personal liability under § 1983*

Section 1983 creates liability only for a defendant's personal acts or decisions. *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault.") An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *Id*. Defendants state that Bukowski was not personally involved in, did not cause, and did not participate in any of the alleged unconstitutional acts or omissions regarding the JCDC's denial to provide Plaintiff with vegan meals. Plaintiff argues that he addressed a grievance to Bukowski, thereby making him "personally involved", premised on the theory that he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye," *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Plaintiff misreads *Jones*; earlier, *Jones* also requires that "[t]o be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct." *Jones*, 856 F.2d at 992. A respondeat superior theory of liability under § 1983 does not

- 8 -

exist; Plaintiff must show "some causal connection or affirmative link between the action

complained about and the official sued," *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011).

By only arguing that Bukowski was notified of the request, he fails to demonstrate that

Bukowski had any kind of authority over, much less a *causal* connection to, the denial of vegan

meals. Accordingly, summary judgment must be granted in favor of Defendant Bukowski on

each and every of Plaintiff's § 1983 claims.

Curiously, Defendants do not argue that the same reasoning applies to Defendant

Stevenson, even though his affidavit asserts that he was not involved in diet or meal plans, was

not involved in the creation or implementation of food and meal policies at JCDC, and has no

authority to grant or deny an inmate's request for an alternative diet or meal plan. [38] exh. D ¶¶

4-5). However, Plaintiff's complaint does aver that he spoke directly with Stevenson, and that

Stevenson communicated to Plaintiff that the JCDC was not required to provide vegan meals.

As Defendants have noted in their brief (and as supported in their affidavits), it appears

that the correct defendant in this action should actually be Michael D. Downey, the Chief of

Corrections. Downey was responsible for day-to-day operations and administration and had final

authority to implement meal policy. Downey is not a named defendant. Plaintiff has neglected to

name the correct defendant in his complaint. However, district courts are required to liberally

construe a *pro se* complaint, regardless of how inartfully pleaded it is. *Castillo v. Cook County

Mail Room Dept.*, 990 F.2d 304, 307 (7th Cir. 1993) (requiring the district court to allow a *pro se*

defendant to amend his complaint when he named an unsuable entity). In the interest of

thoroughness, and regardless of whether Stevenson is a proper defendant, the following analysis

will show that even if Plaintiff had properly designated Downey as a defendant, this court would

still be required to grant summary judgment in favor of Defendants (including Downey) as a

matter of law.

*III. Eighth Amendment claim*

Plaintiff claims that his Eighth Amendment rights were violated when he did not receive

vegan meals because he was denied adequate nutrition. The deliberate indifference to serious

medical needs of prisoners is proscribed by the Eighth Amendment because doing so constitutes

the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical

care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v.*

*Brennan*, 511 U.S. 825, 832 (1994). In the context of prison meals, a prisoner's diet must provide

adequate nutrition. *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

However, as Defendants argue, several district courts, including this one, have held that a

prisoner's Eighth Amendment rights are not violated when he voluntarily opts not to eat meals

that are nutritionally adequate *solely* on the basis of a religious preference. *Campbell v. Cornell*

*Corr. of Rhode Island, Inc.*, 564 F. Supp. 2d 99, 103 (D.R.I. 2008); *Kyles v. Mathy*, 09-1084,

2011 WL 4737403 (C.D. Ill. Oct. 6, 2011) (unpublished); *Powell v. Raemisch*, 10-CV-202-BBC,

2010 WL 2429709 (W.D. Wis. June 11, 2010) (unpublished).

Even if there were no such categorical exception, in order to qualify as a deliberate

indifference to serious medical needs, a deprivation must objectively be sufficiently serious and

the official must have acted or failed to act despite his knowledge of a substantial risk of serious

harm. *Farmer*, 511 U.S. at 842. Therefore, prison officials cannot be held liable under the Eighth

Amendment unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not. *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). In *Mays*, the court held that while the plaintiff did have a lowered white blood cell count, showing an objectively serious harm, the prison officials acknowledged that his diet was inadequate and took steps to address the issue. *Id*. at 648. Accordingly, there was no Eighth Amendment violation. Here, Plaintiff has both failed to allege that he suffered any serious effects of poor nutrition (or the risk of such serious harm), such as losing so much weight that he had to be hospitalized, *Nelson v. Miller*, 570 F.3d 868, 880 (7th Cir. 2009), or a lower white blood cell count, *Mays,* 575 F.3d at 648, and failed to allege that Defendants knew about that harm and could have prevented it but failed to do so. Accordingly, summary judgment must be granted to Defendants on Plaintiff's Eighth Amendment claim.

*IV. First Amendment claim*

Plaintiff also claims that his First Amendment rights were violated when the JCDC did not allow him to practice his religious beliefs. Plaintiff therefore alleges that his free exercise rights were violated. "Although prisoners enjoy rights under the free-exercise clause of the first amendment (applied to the states by the due process clause of the fourteenth amendment), many decisions hold that these rights are subject to limits appropriate to the nature of prison life." *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). As a prerequisite, only those beliefs that are both sincerely held and religious in nature may be afforded First Amendment protection. *See United States v. Seeger*, 380 U.S. 163, 166 (1965). It is not disputed that Plaintiff has

professed a belief that he is a Hebrew-Israelite and that he must hew to certain religious beliefs.

It is also not substantially disputed that Plaintiff's beliefs are sincere.[2]

To prevail on a free exercise claim, a plaintiff begins by showing that the government has

placed a substantial burden on his observation of a central religious belief or practice. *Hernandez*

*v. C.I.R.*, 490 U.S. 680, 699 (1989). The burden then shifts to the government. While the bar is

normally whether a compelling government interest justifies the burden, *id.*, in the interest of

affording significant deference to prison officials, courts permit prison regulations that are

reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342,

349 (1987).


*A. Substantial burden*

Defendants do not dispute that the deprivation of religiously-mandated meals for nearly a

month was a substantial burden on Plaintiff. In general, "[a] prisoner's religious dietary practice

is substantially burdened when the prison forces him to choose between his religious practice and

adequate nutrition." *Nelson*, 570 F.3d at 879. The Second and Ninth Circuits, among others, have

also stated this rule in no uncertain terms. *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987)

("Inmates also have the right to be provided with food sufficient to sustain them in good health

---

[2] In their Statement of Uncontested Facts, Defendants state that Plaintiff purchased "picante beef flavor" ramen noodle packs, which contained beef and beef products, and ate them. Because Defendants do not refer to those facts in their argument, it is unclear for what purpose those assertions are intended. To the extent that Defendants attempt to suggest that Plaintiff's beliefs are not sincere, it is settled law in this Circuit that "a sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?" *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012); *Agrawal v. Briley*, 02 C 6807, 2004 WL 1977581 (N.D. Ill. Aug. 25, 2004) (unpublished).

that satisfies the dietary laws of their religion."); *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975) ("The courts have properly recognized that prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples."); *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004).

As for the duration of denial, a period of approximately a month qualifies as being more than a *de minimis* interruption. *Nelson*, 570 F.3d at 880 (failing to provide a non-meat diet for the 40 days of Lent imposed substantial burden on religious exercise); *Warren v. Peterson*, 08 C 2518, 2008 WL 4411566 (N.D. Ill. Sept. 25, 2008) (failing to provide vegan meals for 13 consecutive days imposed substantial burden); *cf. Rapier v. Harris*, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (failing to provide a non-pork meal as requested for three out of 810 meals not substantial burden); *Subil v. Sheriff of Porter County*, 2:04-CV-257 PS, 2005 WL 1174218 (N.D. Ind. Apr. 29, 2005) (failing to provide Kosher lunch while being transported to and from court not substantial burden); *Boyd v. Lehman*, C05-0020-JLR, 2006 WL 1442201 (W.D. Wash. May 19, 2006) (failing to provide meals in accordance with Ramadan for three days not substantial burden). This right is not without limit.

### B. Justification for denial

Regarding the government's justification of the denial, this court must evaluate four factors: "(1) whether the restriction is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative means of exercising the right that remain open to the inmate; (3) what impact an accommodation of the asserted right will have on guards and other inmates; and (4) whether there are obvious alternatives to the restriction that show that it is an

exaggerated response to penological concerns." *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009) (editing marks omitted). Additionally, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner v. Safley*, 482 U.S. 78, 90 (1987).

Regarding the first factor, the government interests of controlling costs and managing the budget, preventing security risks, and a streamlined meal plan system are legitimate government objectives. *Koger v. Bryan*, 523 F.3d 789, 800 (7th Cir. 2008) (requirement that prison clergy verify religious affiliation before providing non-meat diet a legitimate concern); *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991) (noting that both security and economic concerns are legitimate penological demands); *Resnick v. Adams*, 348 F.3d 763, 769 (9th Cir. 2003) (orderly administration of prison food service a legitimate governmental interest); *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) (not providing Kosher meals related to compelling government interests of maintaining good order and controlling costs). Defendants have provided an affidavit indicating that "providing a standardized dietary plan avoids jealousy among inmates and therefore promotes jail order and security" and "providing a standardized dietary plan promotes administrative and staff efficiencies". Further, Defendants have provided an affidavit from their food service provider showing that the cost of providing a nutritionally adequate vegetarian meal exceeds the per-meal budget by 64% and a vegan one by 228%.

Plaintiff argues, in his Response, that the "[l]ack of financing is not a defense to a failure to provide minimum constitutional standards." *Duran v. Anaya*, 642 F. Supp. 510, 525 (D.N.M. 1986), *citing Jackson v. Bishop*, 404 F.2d 571, 580 (8th Cir.1968). But *Duran* and *Jackson* are inapposite to the present case. In *Duran*, when prisoners challenged a proposed layoff of medical, mental health, and security staff, that court held that the prison was not permitted to

- 14 -

reduce staff below the minimum Eighth Amendment level, as doing so would lead to "unnecessary deaths, physical trauma, suicides, and self-mutilation." *Duran*, 642 F.Supp at 525-526. And the court in *Jackson* held that the Eighth Amendment did not allow a prison to continue using a whipping strap to discipline inmates, despite the state's protestations that it could not afford other means of punishment. Even if Eighth and First Amendment jurisprudence are coextensive, which they are not, Plaintiff has not alleged that his injuries rise to the level of physical trauma, much less death. This factor therefore clearly weighs heavily in favor of Defendants.

The second factor is whether there are alternative means of exercising the right that remain open to the inmate. Defendants argue that they permitted Plaintiff "to read his Book of Yahweh, pray in his cell during the day, pray over meals, study his religion, and celebrate his religious holidays," and that even though Plaintiff was not permitted to wear a "tzit", he was not suing over that denial.[3] On those grounds, Defendants attempt to argue that Plaintiff was thereby permitted sufficient alternative means of exercising his religion because the Supreme Court found it sufficient that prisoners were "not deprived of all forms of religious exercise, but instead freely observe a number of their religious obligations." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987). But Defendants define the issue too broadly. In *O'Lone*, the issue was whether Muslim prisoners were permitted to congregate every Friday at a time after the sun reaches its

---

[3] A "tzit", as Plaintiff describes it, is "an article of clothing" that "covers your whole body", "sort of like a robe". More accurately, the tzitzit is a fringe attached to certain articles of clothing. The "'tallit katan,' [] is a . . . shawl, usually worn at all times under the clothing, as a religious undergarment. . . decorated by fringes referred to as 'tzitzit.'" *Love v. New Jersey Dept. of Correction*, CIV.A. 10-1714 GEB, 2011 WL 345964 (D.N.J. Jan. 31, 2011). As the Tenth Circuit noted, the "tzitzit is worn by some of the Jewish faith to fulfill the commandment appearing in the Bible at the book of Numbers, ch. 15, verse 37." *Boles v. Neet*, 486 F.3d 1177, 1179, n.2 (10th Cir. 2007).

zenith but before the afternoon prayer, as required by their religion. *O'Lone*, 482 U.S. at 344.

The Supreme Court held that a prison restriction not permitting inmates to meet at that specific

time was reasonable, but only because the "right to congregate for prayer or discussion [was]

virtually unlimited except during working hours." *Id.* (editing marks omitted). Here, it was not

that Defendants failed to provide Plaintiff with vegan food processed a peculiar way, or did not

permit him to eat at unusual times separate from the rest of the prison population, but rather that

he was not provided with enough food that was compatible with his religious needs. *See

Ashelman v. Wawrzaszek*, 111 F.3d 674, 677-78 (9th Cir. 1997) ("We recognized that requiring a

believer to defile himself by doing something that is completely forbidden by his religion is

different from (and more serious than) curtailing various ways of expressing beliefs for which

alternatives are available."). This factor weighs against Defendants.

The third factor, the impact of an accommodation of the asserted right will have on

guards and other inmates, has been already addressed above. To reiterate, Defendants assert that

"providing a standardized dietary plan also avoids jealousy among inmates and therefore

promotes order and security at the JCDC." As this court is required to be deferential toward

prison officials' evaluation of their own security needs, this factor weighs in favor of

Defendants.[4]

---

[4] We are also required to accept that testimony on its face. *Cf. O'Lone*, 482 U.S. at 366-67 (Brennan, J., dissenting) ("Petitioners also maintained that the assignment of full minimum Muslim inmates to the Farm or its near vicinity might provoke resentment because of other inmates' perception that Muslims were receiving special treatment. Officials pointed to no such perception during the period in which the alternative Friday detail was in existence, nor to any resentment of the fact that Muslims' dietary preferences are accommodated and that Muslims are permitted to operate on a special schedule during the month of Ramadan. Nor do they identify any such problems created by the accommodation of the religious preferences of inmates of other faiths. Once again, prison officials should be required at a minimum to identify the basis for their assertions.")

The fourth and last factor is whether there are obvious alternatives to the restriction. In many other cases, prison facilities have attempted at least some kind of concession, *e.g.*, extra servings of vegetables when available, or providing vegetarian food when the prison menu does not include vegetables, *LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991); or permitting that a prisoner's third-party-provided Kosher dinner could be supplemented by whole fruits, vegetables, nuts, and cereals, *Ashelman*, 111 F.3d at 677-78; or permitting him to select more of the non-meat items from the general food line, *Maydak v. United States*, 98 F. App'x 1, 3 (D.C. Cir. 2004) (unpublished).[5] Or where a prison already provides vegan meals to other prisoners whose religious beliefs compel such a diet, it was not permitted to decline vegan meals to a Buddhist prisoner who desired vegan meals but whose faith could only provide a basis for less-restrictive (and less-expensive) vegetarian meals. *Dawson v. Burnett*, 631 F. Supp. 2d 878, 883 (W.D. Mich. 2009).

Defendants only suggest that inmates may purchase vegan food items from the commissary. But the prices for those items are prohibitively high, given that Defendants have not even indicated that they maintain a work program for inmates. Defendants expect that a prisoner should purchase food in order to sustain himself even though he has no means to earn money. Thus, Plaintiff has effectively no practicable alternative means of exercising his religious

---

[5] The court notes in passing that while fully vegetarian days may be constructed from the menu by combining non-meat lunch menu selections from one day with non-meat dinner menu selections from a different day, no single day on the menu was meat-free for both lunch and dinner meals. Also, no combination of meals could possibly have fulfilled the required 2,400 calorie nutritional requirement while still complying with a *vegan* diet.

preference to abstain from meat and yet still meet his nutritional requirements.[6] This factor weighs strongly against Defendants.

### C. Related cases from this district

Defendants cite to *Murrell v. Downey*, No. 04-CV-2277 (C.D. Ill. Mar. 29, 2006) (Baker, J.). in support of the proposition that inmates are not entitled to a vegetarian diet. *Murrell (2006)* is inapposite. There, this court held that a Muslim plaintiff was not entitled to a Halal meal because his dietary restrictions only absolutely prohibited him from eating any food containing pork or pork products and, in the absence of a Halal meal, was permitted to eat a Kosher, vegetarian, or fish meal without violating his religion. His religion did not require him to eat a vegetarian or fish meal. Accordingly, the JCDC (as defendant there and here) was entitled to summary judgment because its meals were entirely pork-free, which this court found to be an acceptable alternative meal. In contrast, Plaintiff here claims that he is absolutely prohibited from eating meat. Defendants have not provided any alternative at all. Defendants also cite to *Murrell v. Bukowski*, No. 08-CV-2044 (C.D. Ill. Mar. 11, 2011) (Baker, J.)[7], in support of the proposition that the JCDC's policy of not providing Halal or vegetarian diets was constitutional.

---

[6] Plaintiff's deposition indicates that he thought that vegetarian trays (with cheese) were provided (Dep. 57), but Defendants state that no vegetarian trays are provided. Given the presence of some meals that are meat-free, *e.g.*, "Day 3 Dinner: mostaciolli [*sic*] w/ cheese, mixed veggies, tossed salad & french dressing; garlic bread; vanilla pudding; juice cup"; "Day 5 Lunch: cheese pizza, tossed salad & french dressing, 2 garlic bread sticks, banana, juice cup"; "Day 9 Lunch: grilled cheese, 2 fri patty potato, raw carrots, fruit cocktail, little debbie, 1 salt 1 ketchup, juice cup", it is not unreasonable to infer, for the purpose of this motion, that Plaintiff misunderstood the menu. Presumably, Plaintiff assumed that some meals were intentionally meat-free, rather than coincidentally so.

[7] Defendants actually cite to docket entry #72 on March 9, 2011, but that order was stricken as per the Text Order of March 10, 2011. The opinion was re-filed as #74 on March 11, 2011.

*Murrell (2011)* is also inapposite. The portion of that opinion dealing with the constitutional

right to a religious diet involved the same parties and same issue as *Murrell (2006)*, and thus was

barred by the doctrine of collateral estoppel. The fourth factor accordingly weighs against

Defendants.

### D. Qualified immunity

Qualified immunity protects government officials from facing suits for damages when

their actions do not violate clearly established constitutional or statutory rights. *See Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818 (1982). Once a defendant asserts a qualified-immunity defense,

the plaintiff has the burden to establish that the defendant's action violated a clearly established

right. *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010). To be clearly established,

a right must be sufficiently clear such "that every reasonable official would have understood that

what he is doing violates that right." *Reichle v. Howards*, --- U.S. ---, 132 S. Ct. 2088, 2090, 182

L. Ed. 2d 985 (2012) (internal quotations and editing marks omitted.) To defeat a qualified-

immunity defense, a plaintiff need not point to a case that is factually identical to the present suit,

but "existing precedent must have placed the statutory or constitutional question beyond debate."

*Ashcroft v. al-Kidd*, --- U.S. ---, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011). Courts may

decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly

established right without reaching the question of whether a constitutional right was violated at

all. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Plaintiff cannot meet his burden of showing that it is "beyond debate" that Defendants

violated his rights by denying him a vegan meal in accordance with his religious beliefs. Plaintiff

may recover damages for a free exercise violation only if Defendants' actions are not reasonably related to a legitimate penological interest under the test established in *Turner v. Safley,* 482 U.S. 78 (1987). As discussed above, refusing to offer vegan meals is reasonably related to the legitimate penological interest of managing the prison budget and maintaining order and security. Further, no case could be found holding that a prison was required to offer alternate meals to comply with an inmate's religious beliefs despite the prison's attestations that such meals were outside of the prison's budget. Thus, in the alternative, Defendants are shielded from liability by qualified immunity.

### E. Conclusion

Defendants' only real defense is simply that vegan meals cost more than non-pork meals, and that it has allotted the food service provider only enough to develop a nutritionally-sufficient non-pork meal. Unlike in other similar cases, where at least some alternative was available, Defendants offer no practicable alternatives at all: no double portions, no supplemental nutrition, no already-offered vegan meal to opt into; just the opportunity to buy snacks at the commissary. Whether due to mere oversight or careful lawyering, Defendants do not assert that they *cannot* afford to increase the budget allotted to the food service provider. Instead, they provide only an affidavit from the Chief of Corrections that $3.05 is budgeted for each inmate meal, and an affidavit provided by their contracted food service provider (presumably acting in its own self-interest) stating that vegetarian and vegan meals would cost more than what the JCDC allocates. It is not an inconceivable leap of the imagination to wonder whether the budget was set at the

lowest negotiated cost to provide a nutritionally-acceptable meal requiring the use of meat, knowing that vegetarian and vegan meals generally cost more.

Plaintiff, however, does not contest this issue. So this court must accept Defendants' facts as true. Although many other prisons find themselves capable of providing vegan meals (Cook County Jail being the most obvious), this court is required to treat the budgetary matters of Kankakee County and the JCDC with great discretion. Should this court order the JCDC to serve vegan meals at a cost premium of over 200%, one conjectures whether the institution might be forced to make up the shortfall by reducing programs for rehabilitation or security.

Nonetheless, although there are a restricted set of situations in which the federal courts intervene, as discussed above, the facts in the case as presented does not present an injury of constitutional proportions. Accordingly, because there is no genuine dispute as to any material fact, even after construing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, this court grants summary judgment to Defendants on the First Amendment claim.

*V. RLUIPA claim*

The Religious Land Use and Institutionalized Persons Act states that a government may not impose a substantial burden on the religious exercise of an inmate, unless the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1. As a threshold matter, RLUIPA only applies to programs that receive Federal funding. 42 U.S.C. § 2000cc-1(b). Plaintiff has not claimed, but Defendants have not denied, that the JCDC receives Federal funding. Even assuming it does, Plaintiff's claim fails

because he is not entitled to any form of relief. Thus, this opinion will decline to examine the merits of Plaintiff's claim and instead address the procedural limits.

First, Plaintiff seeks injunctive relief. However, he has already been transferred to the Illinois Department of Corrections and is no longer in custody at the JCDC. Therefore, because he is no longer subject to the policies, procedures, and conditions of the JCDC, and he has not pled that he will likely be returned to the JCDC, he cannot obtain injunctive relief for violations of RLUIPA. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred."); *see also Vinning-El v. Evans,* 657 F.3d 591, 592 (7th Cir. 2011) (denying injunctive relief in the RLUIPA context). Furthermore, the capable-of-repetition-yet-evading-review doctrine "applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality." *Higgason*, 83 F.3d at 811. This court finds Plaintiff's claim for injunctive relief to be moot.

Second, Plaintiff seeks damages. This court has held that the Eleventh Amendment bars Plaintiff from recovering monetary damages from Defendants acting in their official capacity. (Text Order of May 13, 2011). In addition, RLUIPA does not permit damages against defendants in their individual capacities, because they are not the recipient of federal funds. *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009). Plaintiff's damages claims are therefore also moot. *See generally Vinning-El*, 657 F.3d at 592. Because no remedy is available, the claim may have been dismissed had Defendants so moved, and this court is not required to reach the merits. *Mestre v. Wagner*, 12-1664, 2012 WL 5278686 (3d Cir. Oct. 26, 2012) (unpublished); *cf. Jova v.*

- 22 -

*Smith*, 582 F.3d 410, 417 (2d Cir. 2009) (holding that, under the stricter standard of RLUIPA, a prison's denial of a vegetarian menu where it appears that one could have been provided, was not permitted). Accordingly, summary judgment must be granted for Defendants on the RLUIPA claim.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Summary Judgment [37] is GRANTED.

(2) This case is terminated.

ENTERED this 28th day of January, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE